```
INDEPENDENT HOUSING SERVICES,  )
                               )
              Plaintiff,       )
                               )
     v.                        )
                               )    No. C-91-1220 DLJ
FILLMORE CENTER ASSOCIATES,    )
SAN FRANCISCO REDEVELOPMENT    )    ORDER
AGENCY, and FILLMORE CENTER    )
PROJECT CORPORATION,           )
                               )
              Defendants.      )
_____)
```

On April 19, 1995, the Court heard arguments on defendant San Francisco Redevelopment Agency's ("Agency") motion to reconsider or to certify for interlocutory appeal the Court's December 17, 1994 Order denying the Agency's motion for summary judgment. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record herein, the Court hereby DENIES the Agency's motion for reconsideration.

## I. BACKGROUND

A. <u>Factual Background and Procedural History</u>[1]

This lawsuit arises out of the construction of Fillmore Center ("the project"), a 113 unit apartment building in San Francisco. The project was built as a collaborative effort between the owners and the developers of the project, Fillmore Center Associates ("FCA") and the San Francisco Redevelopment Agency ("the Agency").

---

[1] The facts and history of this case were previously set forth at length in Judge Caulfield's Order of December 28, 1993. <u>See</u> <u>Indep. Housing Servs. v. Fillmore Ctr. Assocs.</u>, 840 F. Supp. 1328, 1332-33 (N.D. Cal. 1993).

In March 1991, before construction was completed, plaintiff Independent Housing Services ("IHS") brought suit against FCA, the Agency, and the project's architects, alleging that the Fillmore Center was designed, constructed and operated in violation of federal, state and local handicap access laws. FCA entered bankruptcy after the suit was filed and has since received a discharge under its plan of reorganization. The project is now owned by Fillmore Center Project Corporation ("FCPC").

On November 15, 1992, the Agency issued revenue refinancing bonds in the amount of $100 million to FCPC to finance the project under the approved plan of reorganization. The Agency's issuance of these bonds is the focus of plaintiff's claims against the Agency. Plaintiff claims that the Agency's issuance of the bonds to FCPC constitutes a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

The Agency moved for summary judgment. The Court, Judge Caulfield presiding, granted summary judgment in part, but denied summary judgment on the ADA claim (and the Section 1983 claim to the extent it was predicated on a violation of the ADA), holding that the provision of bonds to the Fillmore Center would create liability on the part of the Agency if the Fillmore Center was discriminating against disabled beneficiaries of the Agency's program. Independent Housing of San Francisco v. Fillmore Center Associates, 840 F. Supp. 1328,

1343 (N.D. Cal. 1993). The Agency later moved for summary judgment on essentially the same grounds. The Court, visiting Judge Bechtle presiding, again denied summary judgment, finding that the Court had already held that the provision of bonds to the Fillmore Center is sufficient to create ADA liability and that whether or not the Agency provides a benefit to an organization that "discriminates against disabled beneficiaries of the public agency's program" is a genuine issue of material fact that must be decided at trial. December 17, 1994 Order at 4 (quoting Independent Housing Services, 840 F. Supp. at 1344).

B. Legal Standard

    1. Reconsideration

Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders. That rule permits a district court to relieve a party from a final order or judgment on grounds of:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud . . . of an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken.

Fed. R. Civ. P. 60(b).

Even though a denial of summary judgment is not a "final order," it is appropriate to apply an analogous standard for reconsideration. Motions to reconsider are committed to the sound discretion of the trial court. Combs v. Nick Garin

3

Trucking, 825 F.2d 437, 441 (D.C. Cir. 1987). To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. See, e.g., Kern-Tulare Water District v. City of Bakersfield, 634 F. Supp. 656, 665 (E.D. Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987).

Two arguments are commonly used to justify the reconsideration of an order. Initially, parties often come forth with new evidence. In order for evidence to be considered "new" for the purposes of Rule 60(b), it must meet three standards. First, it must be of such a character that it would change the outcome of the Court's prior decision. Fernhoff v. Tahoe Regional Planning Agency, 622 F. Supp. 121, 122 (D. Nev. 1985). Second, it must have been undiscovered at the time of Court's original decision. Engelhard Indus., Inc. v. Research Instrumental Corp., 324 F.2d 347, 352 (9th Cir. 1963), cert. denied, 377 U.S. 923 (1964). Third, it could not have been discovered through exercise of reasonable diligence by the moving party. Shiley, Inc. v. Bentley Laboratories, Inc., 115 F.R.D. 169, 170 (C.D. Cal. 1987); see Fed. R. Civ. P. 60(b)(2). If the evidence was previously available, the motion fails as a matter of law. Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1557-58 n.4 (9th Cir. 1987).

The second major ground used to justify reconsideration of

an order is a clear error of law by the Court or the need to prevent a "manifest injustice" from occurring. In order for a party to demonstrate clear error, the moving party's arguments cannot be the same as those made earlier. Backlund v. Barnhart, 778 F.2d 1386, 1388 (9th Cir. 1985). If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived. Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985).

    2.   Certification for Interlocutory Appeal

At the root of the federal appellate system stands the final judgment rule, which holds that appeal should lie only from an order which terminates litigation at the trial stage. See 28 U.S.C. § 1291; see also Coopers & Lybrand v. Livesay, 437 U.S. 463 (1978); In re Cement Antitrust Litig., 673 F.2d 1020 (9th Cir. 1982), aff'd, 459 U.S. 1190 (1983). This rule reduces the points of error which must be reviewed to those that are material to the actual result, and provides efficiency by consolidating all grounds for appeal into a single action. The denial of a motion for summary judgment is not a final judgment.

Section 1292(b) of Title 28 of the United States Code provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion, and [3] that an immediate appeal from the

> order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals . . . may thereupon . . . permit an appeal . . . if an application is made within ten days . . . .

28 U.S.C. § 1292(b) (emphasis added).

Section 1292(b) is an exception to the established final judgment rule, and thus the party seeking certification "has the burden of showing that <u>exceptional circumstances</u> justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'" <u>Fukuda v. County of Los Angeles</u>, 630 F. Supp. 228, 229 (C.D. Cal. 1986) (quoting <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 475 (1978)) (emphasis added); <u>see also</u> <u>Cement Antitrust</u>, 673 F.2d at 1026.

Each of the three requirements--(1) controlling question of law; (2) substantial grounds for difference of opinion; and (3) appeal may materially advance ultimate determination of the litigation--must be met before such appeal will be certified. <u>Cement Antitrust</u>, 673 F.2d at 1026.

## II.   DISCUSSION

A.   <u>Motion for Reconsideration</u>

Defendant Agency seeks reconsideration of Judge Bechtle's denial of its motion for summary judgment. Essentially, it seeks reconsideration of Judge Caulfield's order as well, as Judge Bechtle's denial of summary judgment was based on Judge Caulfield's denial of summary judgment. Judge Caulfield directly addressed the Agency's contentions and denied summary judgment on the ADA claim (and the Section 1983 claim to the

extent it is dependent on the ADA). Judge Bechtle denied the Agency's new motion for summary judgment on the ADA claim.

The Agency has raised no new arguments and presented no evidence that was not before Judge Caulfield and Judge Bechtle. The Agency argues, however, that there was a clear error of law in that the Court previously did not address its argument that the Agency could only be liable for providing assistance to an organization that discriminates if the Agency's existing redevelopment program as a whole is discriminatory.

Title II of the ADA concerns discrimination in public services. It became effective on January 26, 1992. Section 202 of the ADA, 42 U.S.C. § 12132, provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Section 35.130 of the Department of Justice Regulations implementing the ADA (28 C.F.R. part 35) provides:

> (a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.
> (b)(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability--
> . . .
> (v) Aid or perpetuate discrimination against a qualified individual with a disability <u>by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program.</u> . . .
> (emphasis added).

7

Judge Caulfield held that because the ADA did not go into effect until after construction was completed at Fillmore Center, the ADA does not apply to the Agency's activities prior to completion of construction. The Court noted, however, that the Agency issued $100 million in additional bonds for Fillmore Center since the effective date of the Act. If not for the issuance of the bonds, FCA's creditors would have foreclosed on Fillmore Center. Indep. Housing Servs., 840 F. Supp. at 1344. The Court found that this constituted "significant assistance to an agency, organization, or person" within the meaning of 28 C.F.R. 35.130(b)(1)(v). Id. Thus, if plaintiff can prove at trial that the Fillmore Center "discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program," 28 C.F.R. 35.130(b)(1)(v), the Agency can be held liable for providing "significant assistance" to the Center.

Judge Bechtle reaffirmed the denial of summary judgment, noting that the Court had already held that "the ADA is applicable to the Agency's issuance of the bonds, and that the Agency may be liable under the ADA if it provided assistance 'to an organization that discriminates against disabled beneficiaries of the public agency's program.'" December 17, 1994 Order at 4 (quoting Indep. Housing Servs., 840 F. Supp. at 1344). As to whether the Fillmore Center discriminates against disabled beneficiaries of the Agency's program, this is a genuine issue of material fact that must be decided at trial.

The Agency contends that Judge Bechtle's decision is wrong and must be reconsidered. The Agency claims that by being held liable simply for issuing financing bonds for the benefit of a private organization, it is being forced to become a "guarantor" that the organization does not discriminate. The Agency argues that if it had not provided the bonds, the Fillmore Center would have foreclosed and everyone would have been worse off. The Agency complains that it should not be liable every time it enters into a contract with a private organization that turns out to discriminate.

The Court's previous holdings, however, are not so broad. A public agency is liable if and only if it provides a substantial <u>benefit</u> to a private organization that discriminates in providing services to <u>beneficiaries of the pubic agency's program</u>, not if it enters into an ordinary contract. <u>Cf.</u> <u>Tyler v. Manhattan</u>, 849 F. Supp. 1429, 1441 n.24 (D. Kan. 1994) (citing <u>Indep. Housing Servs. v. Fillmore Ctr. Assocs.</u>, 840 F. Supp. 1328 (N.D. Cal. 1993)). Here, the Agency implicitly admits that it provided a substantial benefit by arguing that the Fillmore Center would not have been able to remain open if not for the provision of the $100 million bonds and by noting that the bonds were issued in order to preserve affordable housing as part of the City's urban redevelopment program.

The Agency essentially complains that it is unfair to punish it for doing a good deed--for helping to ensure the

9

provision of low-cost housing. As plaintiff notes, however, there is no "good cause" exception to the ADA. A public agency cannot discriminate against the disabled, even if in so doing it is accomplishing a worthwhile objective that would not otherwise be accomplished.

    The plain language of 28 C.F.R. 35.130(b)(1)(v) ("Section 35.130") contradicts the Agency's position. Section 35.130 provides that a public entity is liable under the ADA if it provides "substantial assistance" to a private organization that discriminates against on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program. 28 C.F.R. 35.130(b)(v). Providing $100 million in refinancing bonds to the Fillmore Center to prevent its foreclosure constitutes a circumstance which can support a factual inference that "substantial assistance" has been provided to a private organization. Thus, if the jury finds at trial that the Fillmore Center discriminated against disabled beneficiaries of the Agency's program, the Agency could be liable under the ADA for providing assistance to the Fillmore Center.

    The Agency argues, however, that Section 35.130 cannot be read in isolation. The Agency points out that 28 U.S.C. § 35.150(a) ("Section 35.150") holds that each individual public facility that preexisted the ADA need not be accessible to the disabled so long as the public agency's program, "when viewed

10

in its entirety," is readily accessible. Id. § 35.150(a).[2] The ADA distinguishes between a program's use of an "existing facility," 28 C.F.R. § 35.150 and its use of "new construction," id. § 35.151. As to the latter, the ADA requires that each post-ADA facility used in a public entity's program be readily accessible. As to the former, however, the ADA imposes a different duty: that a public entity operate its program so that the program, "when viewed in its entirety," is readily accessible. Id. § 35.150(a).

Based on this, the Agency contends that it is only liable under the ADA for providing substantial assistance to the Fillmore Center if not just the Fillmore Center itself discriminates, but also the Agency's redevelopment program viewed in its entirety discriminates. Otherwise, claims the Agency, an absurd result would be reached: the City would be liable for any discrimination in existing facilities of the Fillmore Center, but would only be liable for discrimination in its own existing facilities if its redevelopment program as a

---

[2] 28 C.F.R. § 35.150 provides:

Existing facilities

(a) General. A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. This paragraph does not---
    (1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities . . . .

11

whole discriminates.

The Court disagrees. By its own terms, Section 35.150 only applies in a situation where a public entity operates its <u>own</u> services, programs or activities. Where, as here, the agency is providing financial assistance to <u>another</u> organization which discriminates on the basis of disability, the activity of the agency is governed by Section 35.130(b)(1)(v). Otherwise, Section 35.130(b)(1)(v) would be a nullity: If Section 35.130(b)(1)(v) were read as only imposing liability on the Agency for providing assistance to the Fillmore Center if the Agency's redevelopment program <u>as a whole</u> is discriminatory, it would be meaningless, because under Section 35.150, the Agency is <u>already</u> liable if its existing housing program as a whole is discriminatory.

Holding a public agency liable for providing aid to a private organization that discriminates, at the same time the agency is only liable if its own existing program as a whole discriminates, is not an irrational result. It make little sense to require a public agency to tear down all facilities that existed pre-ADA because each was not accessible to the disabled. However, if an Agency takes actions <u>post</u>-ADA, whether building new facilities of its own or funding existing facilities of private organizations, it must ensure that each of those facilities is accessible to the disabled. This is what 28 U.S.C. § 35.130(b)(1)(v), 35.151 requires.

For these reasons, the Agency's motion for reconsideration

12

is denied. A public agency is liable for providing substantial assistance to an organization that discriminates in the provision of services to beneficiaries of the agency's program, regardless of whether the agency's program as a whole is also discriminatory. Thus the Court holds that it is not an affirmative defense to a violation of 28 U.S.C. § 35.130(b)(1)(v) that the Agency's program as a whole was accessible. Because there is a genuine issue of material fact as to whether the Fillmore Center discriminates/ discriminated in the provision of aid, benefits, or services to beneficiaries of the Agency's redevelopment program, summary judgment is unwarranted. Whether or not there must be proof that the Agency knew that the Fillmore Center was discriminating at the time they provided substantial assistance is an issue not decided by this series of motions. It is an issue that will have to be decided before trial.

B.   Certification for Interlocutory Appeal

In the alternative, the Agency requests that the Court certify the order for interlocutory appeal. Each of three requirements--(1) controlling question of law; (2) substantial grounds for difference of opinion; and (3) appeal may materially advance ultimate determination of the litigation-- must be met before such appeal will be certified. Cement Antitrust, 673 F.2d at 1026. Although a controlling question of law is involved, there do not appear to be substantial grounds for difference of opinion. In any event, appeal will

13

not materially advance the ultimate determination of the litigation. The case is proceeding to trial, and similar issues and questions will be raised, regardless of whether or not the instant issue is certified for interlocutory appeal.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion for reconsideration and DENIES defendant's request to certify the order for interlocutory appeal. A status conference in this case will be held September 13, 1995 at 8:30 a.m.

IT IS SO ORDERED.

Dated:     July 31, 1995

_____
D. Lowell Jensen
United States District Judge

14